**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HAYTHAM SAMHAN, | ) NO. 2:26-cv-03064-KS |
| Petitioner, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| JAIME RIOS et al., | ) |
| | ) |
| Respondents. | ) |
| ————————————————— | ) |

Before the Court is the Amended Petition for Writ of Habeas Corpus by a Person in Federal Custody ("Amended Petition") filed by Petitioner Haytham Samhan ("Petitioner") on April 9, 2026.  (Dkt. No. 12.)  For the following reasons, the Petition is **DENIED without prejudice** to Petitioner's right to file a new habeas petition in the event circumstances change such that relief is warranted.

**BACKGROUND**

A.     **Factual Background**

Petitioner, a self-described "stateless Palestinian," first came to the United States in 1992 on a B1/B2 tourist visa issued on a temporary Jordanian travel document.  (Dkt. No. 12 ¶ 21.)  Petitioner later obtained lawful permanent residency through his mother in 2002.  (*Id.*)

1

In 2004, Petitioner was convicted of robbery. (*Id.* ¶ 22.) Upon completing his prison sentence, Petitioner was immediately transferred to an ICE detention center. (*Id.*) On September 18, 2006, an immigration judge ("IJ") ordered Petitioner removed. (*Id.* ¶ 29.) On July 12, 2007, after more than nine months in detention, Petitioner was released from custody and placed under an Order of Supervision ("OSUP") requiring regular chick-ins with ICE officers in California. (*Id.* ¶ 22-23.) Since being released on the OSUP, Petitioner has attended every check-in and notified his ICE officers whenever he moved. (*Id.* ¶ 23.)

Beginning in 2025, Petitioner's ICE check-ins increased in frequency and intensity. He attended check-ins on January 20, 2026, February 25, 2026, and March 25, 2026. (*Id.* ¶ 27.) At the February check-in, Petitioner's attorney raised concerns that Petitioner had serious and ongoing medical needs, including a recent surgery and a need for future surgery. (*Id.* ¶ 28.) The ICE officers set a follow-up check-in for March, allegedly conditioned on Petitioner providing a letter confirming the date of his upcoming surgery. (*Id.*)

At the March check-in, Petitioner's attorney again raised Petitioner's medical needs and advised the ICE officers that there were challenges with scheduling Petitioner's surgery. (*Id.* ¶ 29.) The ICE officers allegedly stated that Petitioner's necessary surgery was a "pending medical issue," which would not help in "his situation." (*Id.*) The officers also reiterated that if he could confirm a surgery date, his next check-in would be scheduled a few weeks after he had been able "to recover." (*Id.*)

\\
\\
\\
\\
\\
\\

2

**B.    Procedural Background**

On March 20, 2026, Petitioner filed a Petition for Writ of Habeas Corpus by a Person in Federal Custody.  (Dkt. No. 1.)[1]  On March 31, 2026, the undersigned U.S. Magistrate Judge ordered a response to the Petition.  (Dkt. No. 10.)  On April 9, 2026, Petitioner filed the Amended Petition.  (Dkt. No. 12.)  Respondents filed an Answer to the Amended Petition on April 10, 2026.  (Dkt. No. 14.)  On April 14, 2026, the parties consented to proceed before a U.S. Magistrate Judge to conduct all further proceedings in this case, decide all dispositive and non-dispositive matters, and order the entry of final judgment.  (Dkt. No. 15.)  Petitioner filed a Reply on April 20, 2026.  (Dkt. No. 16.)  The Court finds this matter suitable for decision without oral argument.

**C.    Claims Presented in the Amended Petition and Complaint for Declaratory and Injunctive Relief**

Petitioner's filing is fashioned as both a habeas petition and a Complaint for Declaratory and Injunctive Relief, and presents the following claims for relief:

Count One for violation of 8 U.S.C. § 1231, which "governs detention and removal of noncitizens following a final order of removal"; and violations of 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13, "the regulations that govern the detention and release of removable noncitizens." (Am. Pet. ¶¶ 46, 47.)

Count Two for violation of procedural due process under the Fifth Amendment to the U.S. Constitution.  (Am. Pet. ¶¶ 51-53.)

---

[1]  Also on March 20, 2026, Petitioner filed an Ex Parte Application for Temporary Restraining Order as to Unlawful Re-Detention ("TRO Request").  (Dkt. No. 2.)  On March 27, 2026, after receiving notification that Petitioner was withdrawing his Ex Parte Application, U.S. District Judge Cynthia Valenzuela denied the TRO request as moot. (Dkt. No. 9.)

Count Three for violation of the Fifth Amendment to the U.S. Constitution based on indefinite detention.  (Am. Pet. ¶¶ 57-58.)

Count Four for violation of the Fifth Amendment based on potential removal to a third country.  (Am. Pet. ¶¶ 65-75.)

Petitioner seeks the following relief: an order that he not be transferred outside of this judicial district or removed from the United States while the Petition is pending; an Order to Show Cause requiring Respondents to show cause within three days why the petition should not be granted; a writ of habeas corpus enjoining Respondents from (a) re-detaining Petitioner without "first following all applicable procedures in U.S.C. § 1231, 8 C.F.R §§ 241.4, 241.13, and any other relevant statutory and regulatory procedures, and due process; (b) re-detaining Petitioner "without first providing a pre-deprivation hearing before a neutral adjudicator where the government demonstrates by clear and convincing evidence that there has been a material change in circumstances such that [Petitioner] is now a danger or a flight risk and that his removal is reasonably foreseeable; (c) re-detaining Petitioner unless and until Respondents obtain a travel document for his removal; (d) removing or attempting to remove Petitioner to a third country unless Respondents give Petitioner and his counsel at least ten (10) days "to raise a fear-based claim for protection prior to  removal," and if Petitioner asserts a fear-based claim providing "Petitioner a meaningful opportunity to be heard on his fear-based claim."  (Am Pet. at 31-32.)

### D.      Complaint for Injunctive and Declaratory Relief

In his Complaint for Declaratory and Injunctive Relief, Petitioner seeks to prospectively secure certain due process safeguards prior to:  (1) any potential re-arrest and detention by immigration authorities; and (2) any potential removal to a third country.  (*Id.* ¶¶ 45-75.) Specifically, Petitioner "requests that any attempt to re-detain [Petitioner] comply with

4

applicable law and regulations and the Due Process Clause of the Fifth Amendment to the Constitution, including adequate notice of any third country to which Respondents intend to remove Petitioner, evidence of Respondents' efforts to effectuate that removal, and a meaningful opportunity to apply for fear-based protection." (*Id.* ¶ 4.) In support of the request, Petitioner cites evidence – including recent news articles, the experience of Petitioner's counsel while representing other noncitizens, and case law – indicating that Petitioner faces a strong likelihood of being detained at an upcoming check-in appointment. (*Id.* ¶¶ 32-34 n.1-3.)

### E.      Respondents' Answer

In the Answer, Respondents argue that Petitioner's Count One is premature because there is no allegation of any failure to comply with agency regulations. Specifically, the government emphasizes that "Petitioner is admittedly not detained and his supervised release has not been revoked, such that the regulations would have been implicated in the first instance." (Answer at 2.) Thus, Respondents argue that Petitioner's claim is premature and argue that because Petitioner is *not* currently detained, his reliance on 8 C.F.R. §§ 241.4(1) and 241.13(j) is misplaced because both of these regulations pertain to post-detention process, not pre-detention process. (*Id.*) Respondents also maintain that Petitioner is not entitled to the prospective injunction he seeks because "he has not shown prior wrongful conduct suggesting the possibility of future wrongful conduct[.]" (*Id.* at 3.) Respondents further emphasize that Petitioner himself acknowledges attending immigration check-ins on January 20, 2026, February 25, 2026, and March 25, 2026, where he was not arrested or detained. (*Id.*)

With respect to Petitioner's Fifth Amendment procedural due process claim in Count Two, Respondent argues that this claim fails because the Fifth Amendment protects individuals from imprisonment, including custody, detention, or other forms of physical restraints to the individual's liberty, but here, "Petitioner has not experienced the requisite physical

deprivation." (*Id.* at 4.) Moreover, Respondent notes that Petitioner "does not seriously challenge any specific conditions of supervised release." (*Id.* at 6.)

As to Petitioner's Claim Two regarding "indefinite detention," Respondents emphasize that this claim fails because Petitioner has not been held in indefinite custody but has been free on OSUP. (*Id.* at 7.) To the extent the Petition, in Count Three, seeks an order of the Court precluding <u>future</u> lengthy detention, Respondents argue that any such claim for relief under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), based on potential future lengthy detention is not yet ripe for adjudication. (*Id.*)

As to Count Four regarding possible third-country removal, Respondents argue that this claim fails because Petitioner does not plausibly allege a risk of removal and the Court lacks jurisdiction to review the Order of Removal. (*Id.* at 8.) Respondents note that "there are no allegations that the agency is pursuing removal to a third country, that is, a country other than the one designated in Petitioner's removal order." (*Id.*) Thus, Petitioner "cannot demonstrate that any due process requirements for a third-country removal were implicated in this case" or that the agency was required to comply with due process and failed to do so. (*Id.*) Respondents add that "there is no evidence before the Court showing Respondents seek to remove Petitioner to a third country." (*Id.*)

## F.    Petitioner's Reply

In the Reply, Petitioner emphasizes that he "is not challenging the conditions of his supervision" but "is bringing a pre-deprivation challenge to his impending re-arrest in violation of, and based on, his statutory and constitutional due process rights" and insists that the challenge is "ripe." (Reply at 2.) Petitioner also reiterates his challenge to "removal to a third country without due process" and maintains that this claim is ripe because "Petitioner has alleged sufficient facts, including an active Third Country Removal Policy by Respondents

under which Petitioner may be detained." (*Id.*) Plaintiff insists that his detention claims are ripe because "there is a credible and imminent threat of irreparable injury." (*Id.* at 3.)

## LEGAL STANDARDS

### A.      Petition for Writ of Habeas Corpus

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v.* Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020).

### B.      Standing and Ripeness Requirements

In order to sue for redress in federal court a plaintiff must have standing to assert the assert the claim at issue. A "constitutional minimum" of standing is met by showing that three elements are satisfied: (1) the plaintiff has suffered an "injury in fact"; (2) there is a causal connection between the injury and the offending conduct; and (3) it must be "likely" that the injury will be redressed by a favorable decision from the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he plaintiff must demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'sufficient likelihood that he will again be wronged in a similar way.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (emphasis added) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983), and citing *Lujan*, 504 U.S. at 560).

A plaintiff must also establish that his claim is ripe for adjudication by "demonstrat[ing] that the harm is part of a pattern of officially sanctioned . . . behavior, violative of [] federal rights." *Id.* (internal quotation marks omitted).

## C.   Declaratory and Prospective Injunctive Relief

With the Amended Petition, Petitioner joined a Complaint for Declaratory and Injunctive Relief in which he seeks an order requiring Respondents to take certain specific steps before removing Petitioner to a third country and enjoining the government from removing Petitioner from the United States unless such pre-removal procedures are followed. (Am. Pet. ¶¶ 69-75.)

When declaratory relief is sought, the ripeness doctrine protects against premature adjudication of issues. A case or controversy is ripe if the court finds "a substantial controversy between parties having adverse legal interests[] of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). The parties must also present a dispute that is "definite and concrete." *Id.* "[A] court cannot grant declaratory relief if the dispute between the parties is hypothetical or the rights at issue are merely speculative." *James River Insurance Company v. Glaeser Builders*, No. CV 15-01886 SJO (AS), 2015 WL 12830393, at *1 (C.D. Cal. Dec. 28, 2015).

## D.   Due Process Requirements Post-Order of Removal under 8 U.S.C. § 1231

Under § 1231(a)(2), a petitioner within the 90-day removal window does not have a due process right to a further detention hearing. *See Khotesouvan v. Morones*, 386 F.3d 1298, 1301 (9th Cir. 2004). For such individuals, a right to a detention hearing does not arise until the 90-

8

day removal period has expired because Section 1231(a)(2) authorizes detention for 90 days only. *Zadvydas*, 533 U.S. at 699.

## DISCUSSION

This federal court has jurisdiction to hear this matter under 28 U.S.C. § 2241. Petitioner seeks three analytically distinct forms of relief: (1) a grant of the petition for habeas corpus; (2) declaratory judgment preventing Petitioner's re-detention without procedural protections of a pre-detention hearing; and (3) prospective injunctive relief based on alleged likelihood of future due process violations if he is removed to a third country without adequate notice and ability to object. The Court addresses each of Petitioner's claims below.

### A.    Due Process Claims/Request for Hearing Before Re-Detention (Counts 1-3)

Petitioner maintains that the Due Process Clause of the Fifth Amendment entitles him to the relief he seeks. (*See* Dkt. No. 12 ¶¶ 51-56.) Under the Due Process Clause of the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Thus, nonpunitive government detention violates the Due Process Clause unless the detention is ordered "in certain special and narrow . . . circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (citations omitted).

"[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]" *Hernandez v Sessions*, 872 F.3d 976, 981 (9th Cir. 2017); *see also Walters v. Reno*, 145 F.3d 1032, 1037 (9th Cir. 1998) (It is "well established that aliens

9

facing deportation from this country are entitled to due process rights."). The liberty interest persists even for those who were previously detained, and who remain subject to "significant constraints on their liberty or over whose liberty the government wields significant discretion." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest.").

Here, the record establishes that Petitioner has a substantial private interest in remaining out of custody due to his medical conditions and deep ties developed in the community. Petitioner has lived in the United States since 1992 – more than three decades. (Dkt. No. 12 ¶ 21.) Since his initial release from immigration custody, Petitioner has built a stable and rooted life in Southern California. (*Id.* ¶ 24.) He is married to a U.S. citizen, and together, he and his wife have a twelve-year-old U.S. citizen son. (*Id.*) Petitioner is the sole financial provider for his family and supports them by working as an Uber driver. (*Id.*) He is an active member of the King Fahad Mosque in Culver City, where he is part of a vibrant and well-connected community. (*Id.*) Petitioner represents that he suffers from serious and ongoing medical conditions and recently underwent surgery to address those medical conditions. (*Id.* ¶ 25.)[2] If Petitioner is re-detained, it would surely have a profound impact on Petitioner's individual health and his family's economic stability and wellbeing. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (noncitizens "who have established connections in this country have due process rights in deportation proceedings").

Nevertheless, the Court concludes that Petitioner's request that the Court impose pre-detention procedural protections as a palliative remedy to prevent possible future due process violations is not ripe. "[A] claim is not ripe for adjudication if it rests upon contingent future

---

[2] The nature of Petitioner's medical conditions is not spelled out in the Petition, understandably so for privacy reasons, but the government does not dispute Petitioner's representations that he has serious medical issues and, notably, it is undisputed that Petitioner has been allowed to remain free from detention to address his medical needs. (*See* Am. Pet. ¶¶ 28-31.)

events that may not occur as anticipated, or indeed may not occur at all." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (internal quotation marks omitted). Petitioner is not currently detained and presents no evidence to indicate that the government is seeking his imminent re-detention. Indeed, Petitioner was released under an OSUP on July 12, 2007, and has remained free from custody for the past nineteen years, while appearing for regular check-ins. (Am. Pet. ¶¶ 22-23.) Moreover, Petitioner's reliance on *Zadvydas* is misplaced, as *Zadvydas* stands for the proposition that the presumptive limit to the reasonable duration of non-citizens held in detention after a final removal order is entered is six months. Here, as Respondents point out, Petitioner is not in custody but remains free on OSUP.

There is a risk of re-detention that exists for Petitioner, as with virtually all non-citizens who have previously been released from immigration detention on OSUP, bond or other conditions. However, the risk is a *possibility* of future harm, not a concrete injury at present. The Ninth Circuit has acknowledged the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez*, 872 F.3d at 995. But in Petitioner's case, the specter of such harm is, as yet, wholly speculative.

In his Amended Petition, Petitioner states that "[h]e is the sole financial provider for his family," which includes his wife and twelve-year-old son. (Dkt. No. 12 ¶ 23.) Petitioner has also consistently complied with the terms of his OSUP. (*Id.*) Thus, the risk of irreparable harm is present should Petitioner be redetained without a hearing or other procedural safeguard. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1035 (where petitioner "was detained after more than two years of attending every required immigration hearing and despite her deep community ties and lack of any criminal record," there was "a significant risk that even the two-day curtailment of liberty that [petitioner] already suffered upon her re-detention by ICE was not justified by any valid interest"). But, Respondents have not yet taken any action violative of Petitioner's due

11

process rights or Respondents' statutory obligations.  Thus, there is no concrete injury that this Court can remedy.

Accordingly, Claims 1 through 3 of the Petition are DENIED.

**B.      Petitioner's Third-Country Removal Claim (Count 4)**

Turning next to Petitioner's possible removal from the United States, Petitioner requests that the Court enjoin the government from removing or attempting to remove Petitioner to a third country unless Respondents give Petitioner and his counsel at least ten days "to raise a fear-based claim for protection prior removal," and if Petitioner asserts a fear-based claim, providing Petitioner a meaningful opportunity to be heard on his fear-based claim.  (*See* Am. Pet. ¶¶ 69-75.)

Although Petitioner is currently subject to a final order of removal, there is no evidence at this juncture of any pending order of removal to a third country.  Petitioner, nonetheless, identifies circumstances that cause him to believe that he may face imminent risk of re-detention and removal to an unidentified third country.  (Dkt. No. 12 ¶¶ 3, 27-31.)  Petitioner points to ICE Director Todd Lyons' memorandum, "Third Country Removals Following the Supreme Court's Order in *Department of Homeland Security v. D.V.D.*, No. 24A1153 (U.S. June 23, 2025)" (the "Lyons Memo"), which provides that ICE may remove any immigrant to a third country "without the need for further procedures" as long as – in the view of the State Department – the United States has received "credible" "assurances" from that country that deportees will not be persecuted or tortured." (*Id.* ¶ 41 n.11.)  Petitioner also points to public statements and media reports as evidence of the imminent risk he may face of removal to a third country.  (*See* Am Pet. ¶¶ 37-41.)

Petitioner states that he "is at risk of third country removal because he has a final order of removal and, as a stateless Palestinian, ICE was previously unsuccessful in getting his designated country of removal – Israel – to accept him, thus leading to his release on an OSUP." (Am. Pet. ¶ 42.)  Petitioner acknowledges that although he has not yet received any notice that the Government plans to remove him to a third country, his "identity as a noncitizen with a removal order – as well as an order deferring removal to his home country – makes him inherently at risk of removal under the terms of the policy expressed in the . . . Lyons Memo[]." *Esmail v. Noem*, 2025 WL 3030589 at *5 n.6 (C.D. Cal. Sep. 26, 2025).

As evidence of the seriousness of the impending risk of third country removal, Petitioner also points to DHS policy statements and the interim order in *U.S. Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025) (mem.), in which Justice Jackson sharply criticized the government's third country removal procedures that permitted removal of noncitizens to third countries without notice or the opportunity to file a claim under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment of Punishment.  (Am. Pet. ¶¶ 40-41.) Petitioner further points to numerous media reports that document the current increased immigration enforcement activity by ICE, including the arrest of numerous non-citizens "who have appeared as instructed as ICE check-ins [and] have been incarcerated or re-incarcerated by ICE." *D.V.D.* at 2153- 2156.  (*See also* Am Pet. ¶¶ 33-34, and n.3.)

Here, Petitioner has demonstrated that he has Article III standing to seek this prospective injunctive relief. *See, e.g., Esmail*, 2025 WL 3030589, at *5-6 (finding that petitioner had standing to seek prospective injunctive relief regarding removal to third country); *G.A.A. v. Chestnut*, No. 1:25-cv-01102-EPG-HC, 2025 WL 3251316, at *1, *3, *7 (E.D. Cal. Nov. 21, 2025) (same, where petitioner was subject to removal order, had been granted withholding of removal to home country of Cameroon, and ICE apparently had tried and failed to obtain permission from multiple third countries to accept him, though neither petitioner nor his immigration counsel had received any written or formal notice or evidence of plans or efforts

to remove him to a third country).  But standing alone is not sufficient to warrant this Court's grant of broad prospective relief of a claim that is not yet ripe.

## ORDER

For the reasons discussed above, IT IS ORDERED that Claims One, Two, Three and Four of Petitioner's Amended Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief be **DENIED** without prejudice.

IT IS SO ADJUDGED.

DATE: July 14, 2026

HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE

14